USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07-02-2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
UNITED STATES OF AMERICA,

-against-

THOMAS HOEY JR. AND ALEJANDRO NORIEGA,

Defendants.
----------------------------------------------------------------x

S3 11-cr-337 (PKC)

MEMORANDUM AND ORDER

CASTEL, U.S.D.J.

      Presently before the Court are several pretrial motions filed by defendants Thomas Hoey Jr. and Alejandro Noriega. Hoey moves (1) to strike the penalty enhancement from Count One and Count Two of the indictment, or, in the alternative, for the Court to conduct an in camera review of the grand jury minutes; (2) for the severance of Count One from the indictment; (3) for a bill of particulars and production of all reports of any scientific tests; and (4) to suppress physical evidence. Noriega moves (1) to suppress physical evidence; and (2) to suppress evidence of his statement to the officers of the New York City Police Department ("NYPD") in the event that his related handwritten statement is not located. For the reasons set forth below, Hoey's motion for an in camera review of the instructions given to the grand jury is granted, Hoey's other motions are denied, Noriega's motion to suppress physical evidence is denied, and the Court declines to rule on Noriega's motion to suppress evidence of his statement to the NYPD at this juncture.[1]

---

[1] Hoey and Noriega join the other's motions.

I. Motion to Strike the Penalty Enhancement from Counts One and Two, or, in the Alternative, for the Court to Inspect the Grand Jury Minutes

On December 20, 2013, a superseding indictment was unsealed charging Hoey in five counts. Count One of the indictment charges Hoey with conspiring to distribute and possess with intent to distribute five kilograms and more of mixtures and substances containing cocaine, in violation of 21 U.S.C. § 841(b)(1)(A) and other controlled substances in violation of various subsections of 21 U.S.C. § 841(b)(1)(C) and (D) and that use of such substances, particularly the cocaine, resulted in the death of Kim Calo. Count Two charges the substantive crime of distribution and possession with intent to distribute an unspecified quantity of cocaine, in violation of 21 U.S.C. § 841(b)(1)(C), and that the use of such controlled substance resulted in the death of Kim Calo. 21 U.S.C. § 841(b)(1)(A) and (C) provide that if "death or serious bodily injury results from the use of such substance," a defendant "shall be sentenced to a term of imprisonment of not less than twenty years or more than life . . . ." 21 U.S.C. § 841(b)(1)(C).

On January 27, 2014, the United States Supreme Court held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." Burrage v. United States, ___ U.S. ___, 134 S.Ct. 881, 892 (2014). Hoey moves to strike the "death results" penalty enhancement from Counts One and Two, or, in the alternative, have the Court conduct an in camera review of the instructions provided to the grand jury prior to indictment to ensure that the instructions complied with the "but-for" requirement of Burrage.[2]

---

[2] Hoey initially moved for dismissal of only Count Two of the indictment. (Mem. in Supp. at 8.) The government construed the motion as a motion to strike the "death results" enhancement from Counts One and Two. (Gov't.

       a. <u>Motion to Strike</u>

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed R. Crim. P. 7(c)(1).  It "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." <u>United States v. Stavroulakis</u>, 952 F.2d 686, 693 (2d Cir. 1992) (internal quotation marks omitted).  "An indictment is sufficient so long as it: (1) 'contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend,' and (2) 'enables [the defendant] to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" <u>United States v. Thompson</u>, 13-cr-378 (AJN), 2013 WL 6246489, at *6 (S.D.N.Y. Dec. 3, 2013) (quoting <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974) (alteration in original).  "[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 254 (1988).  "[D]ismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." <u>Id.</u> at 256 (quoting <u>United States v. Mechanik</u>, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring)).

      Rule 12(b)(2), Fed. R. Crim. P., permits a party to raise "any defense, objection or request that the court can determine without a trial of the general issue."  In support of his motion to strike the "death results" enhancement, Hoey argues that there is a "strong presumption" that the cocaine provided by Hoey did not cause Calo's death.  (Mem. in Supp. at 10.)  The government contends that they will be able to prove at trial that the cocaine provided

---

Mem. at 4 n.1.)  Hoey's reply adopts the government's construction, and the Court addresses the motion as a motion to strike the "death results" enhancement from Counts One and Two.

by Hoey was the "but-for" cause of Calo's death.  (Gov't Mem. at 4.)  "The defect of which the Defendant[] complain[s] is the sufficiency of the Government's proof of the elements of the offense it chose to charge in the indictment. . . . 'Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . . the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.'"  United States v. Perez, 575 F.3d 164, 166-67 (2d Cir. 2009) (quoting United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998).  Hoey doubts the government's ability to prove that the cocaine he is alleged to have provided was the "but-for" cause of Calo's death.  Burrage requires such evidence.  Hoey's motion contests the sufficiency of the government's evidence against him.  Accordingly, Hoey's motion to dismiss the "death results" enhancement from Counts One and Two is denied.

          b.   Motion for In Camera Review

In the alternative, Hoey moves this Court to conduct an in camera inspection of the grand jury minutes.  "The court may authorize disclosure . . . of a grand jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E)(ii).  However, "[a] review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct."  United States v. Torres, 901 F.2d 205, 232 (2d Cir. 1990) (abrogated on other grounds by United States v. Marcus, 628 F.3d 36 (2d Cir. 2010)).

"It is well-settled that a defendant seeking disclosure of grand jury minutes has the burden of showing a 'particularized need' that outweighs the default 'need for secrecy' in grand jury deliberations."  United States v. Forde, 740 F. Supp. 2d 406, 413 (S.D.N.Y. 2010) (citing United States v. Moten, 582 F.2d 654, 662 (2d Cir. 1978).  "[The Rule 6(e)(3)(E)(ii) requirement of showing a ground to dismiss the indictment because of a matter before the grand

jury] extends to legal instructions given to the grand jury." United States v. Jailall, 00-cr-69 (RWS), 2000 WL 1368055, at *2 (S.D.N.Y. Sept. 20, 2000) (Sweet, J.). "Mere speculation that . . . the Government may have improperly instructed the grand jury . . . falls far short of the showing to overcome the presumption of secrecy." Forde, 740 F. Supp. 2d at 414. The government need not provide the grand jury with legal instructions. See United States v. Lopez-Lopez, 282 F.3d 1, 9 (1st Cir. 2002). However, courts have found error where the government incompletely or erroneously provides legal instruction to the grand jury. See United States v. Brito, 907 F.2d 392, 394 (2d Cir. 1990), United States v. Kasper, 10-cr-318 (HBS), 2011 WL 7098042, at *7 (W.D.N.Y. June 20, 2011).

Hoey does not argue that the government engaged in misconduct in instructing the grand jury. But he has come forward with more than mere speculation that the grand jury did not receive the proper instructions on the "but-for" causation necessary to trigger the twenty-year mandatory minimum sentence. So far as this Court is aware, there was no controlling precedent in this Circuit on the causation standard prior to Burrage. The Department of Justice had argued against the adoption of the standard that the Supreme Court adopted in Burrage. The rule in Burrage is not merely an evolutionary development or incremental change, but is a requirement that is non-obvious to the reader from the face of the statute. Mindful that not every change in the law that could touch upon the propriety of a grand jury instructions will warrant an in camera inspection, the defendant has shown a particularized need to have the Court inspect the instructions given to the grand jury. Accordingly, the Court directs the government to produce for in camera review such portions of the grand jury minutes that reflect the instructions given to the grand jury on the "death results" penalty enhancement within fourteen (14) days of this Order.

II.  Motion to Sever Count One

Hoey also moves to sever Count One, which charges Hoey with conspiring to distribute and possess with intent to distribute five kilograms and more of mixtures and substances containing cocaine and other controlled substances in violation of 21 U.S.C. § 841(b)(1).  Hoey alleges that "evidence of Hoey's participation in a cocaine distribution conspiracy in excess of five kilograms would necessarily prejudice a jury's consideration of the charges brought against him that he supplied the cocaine that killed Calo."  (Mem. in Supp. at 12.)

"If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts . . . ."  Rule 14(a), Fed. R. Crim. P.  A severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro v. United States, 506 U.S. 534, 539 (1993) (holding that Rule 14 does not require severance as a matter of law when codefendants present mutually exclusive defenses).  Hoey argues that the evidence presented to prove Count One would prejudice a jury's consideration of the charge that he supplied the cocaine that killed Calo.  However, the "death results" enhancement applies to both Count One and Count Two of the indictment.  Therefore, the trial of Count One would include presentation of evidence of the circumstances of Calo's death.  The evidence which Hoey considers prejudicial would be presented alongside evidence regarding the cause of Calo's death even in the event of a severance of the trial.  Therefore, a trial of Counts One and Two together would not compromise Hoey's trial rights or prevent the jury from making a reliable judgment about Hoey's guilt or lack thereof as to either count.  Accordingly, Hoey's motion for severance is denied.

III. Motion for a Bill of Particulars

Rule 7(f), Fed. R. Crim. P., permits a defendant to seek a bill of particulars where necessary "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Chen, 378 F.3d 151, 163 (2d Cir 2004) (quoting United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999)). "[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." Id. A defendant's notice of the specific acts for which he was charged must be evaluated in light of all the information he has received from the government and not merely by information provided in an indictment. See, e.g., United States v. Barnes, 158 F.3d 662, 665-66 (2d Cir. 1998). "The standard applied to the information sought is not whether it is helpful to the defense, but whether it is necessary." United States v. Arreaga, 03-cr-1211 (RWS), 2005 WL 1253866, at *1 (S.D.N.Y. May 27, 2005).

Hoey seeks (1) the names of Hoey's "other[]" alleged Count One conspirators; (2) the nature and substance of the "other things" referenced in Count Four; (3) the names and affiliations of the "law enforcement agents" mentioned in Count Five; (4) "a list of each drug transaction in which the government claims Thomas Hoey was involved, together with any other involved parties, the nature and amount of the drug and date and location of said transaction;" (5) "With respect to Count One, the date of the earliest statement and/or event upon which the prosecution will rely to prove that the conspiracy existed;" (6) "With respect to Count One, the nature of any and all statements and/or events, other than those already contained in the


indictment, upon which the prosecution intends to rely to prove that the conspiracy existed."[3]

(Conway Affirm. ¶ 22(B)-(D).

> Pursuant to Local Criminal Rule 16.1,
>
> No motion addressed to a bill of particulars or any discovery matter shall be heard unless counsel for the moving party files in or simultaneously with the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement. If some of the issues raised by the motion have been resolved by agreement, the affidavit shall specify the issues remaining unresolved.

Local Criminal Rule 16.1. Hoey's motion papers include no such affidavit. Although Hoey's prior counsel filed an affirmation with the moving papers, the affirmation does not discuss counsel's efforts to confer with the government prior to filing the motion. This failure provides a sufficient basis to deny Hoey's motion for a bill of particulars. Arreaga, 2005 WL 1253866, at *2; United States v. Molina, 11-cr-528 (JFK), 2013 WL 2455922, at *4 (S.D.N.Y. June 5, 2013). Accordingly, Hoey's motion for a bill of particulars is denied. If, after conferring with the government, Hoey is unable to resolve the issues raised by his motion, he may file a new motion with an appropriate affidavit.

### IV. Motions to Suppress Physical Evidence

Hoey and Noriega move to suppress physical evidence on the grounds that the warrant authorizing NYPD officers to search Noriega's residence, a white 2005 Lincoln Town

---

[3] Hoey also seeks all results and reports of tests and experiments in the government's possession or control. The government maintains that it has disclosed all reports in its possession, or which it is presently aware, and that it will continue to disclose any further reports of which it becomes aware, pursuant to Rule 16, Fed. R. Crim. P. Based on the government's representation, the motion is denied as moot.

Car, a black Chrysler, and the interior of a dark-colored gym bag was overbroad and lacked particularity.[4]  (Conway Aff. Ex. E & H at 5.)

> The warrant authorized search and seizure of the following property:
>
> a. cocaine,[]vials, caps, small ziplock-style bags, and other evidence of the possession and distribution of cocaine including but not limited to paraphernalia used to process and distribute the drug including but not limited to dilutants and scales, records and documents reflecting drug transactions in any format including but not limited to stored electronic communications, data, information and images contained in computer disks, CD ROMs and hard drives, and counter-surveillance equipment including but not limited to cameras, audio microphones, monitors, remote buzzers, whistles and alarms, and scanners;
>
> b. electronic communication equipment including but not limited to telephone bases and handsets, cellular telephones, answering machines, paging devices and related equipment including but not limited to auxiliary batteries, chargers, and wiring, and stored information, data, and images contained on or in said communication equipment including but not limited to stored names and numbers and recorded messages; and electronic security equipment and devices.
>
> c. evidence of ownership and use of the target premises, or the use of property located therein by any person, including but not limited to keys, telephone bills, utility bills, bank statements, leases, deeds, or rent receipts related to the target premises or other real property, mail addressed to or from the target premises or other documents bearing the address of the target premises, identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal papers, tooth and hair brushes, and videotapes and photographs of persons;

---

[4] "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Alderman v. United States, 394 U.S. 165, 174 (1969).  Accordingly, any defendant challenging a warrant must establish a reasonable expectation of privacy in the place searched and the items seized.  Noriega has standing to challenge the search of his residence, in which he has a reasonable expectation of privacy.  See U.S. Const. amend. IV ("The right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures, shall not be violated . . .").  Hoey challenges the search of the two vehicles, which were registered to the Long Island Banana Corporation.  (Conway Aff. ¶ 12.)  The government does not challenge Hoey's standing to contest the search of the vehicles.  "An owner or operator of a business . . . has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable." New York v. Burger, 482 U.S. 691, 699 (1987).  The Court assumes without deciding that Hoey and Noriega have standing to contest the searches.

which is evidence of illegal drug possession . . . .

(Conway Aff. Ex. E & H at 5.)  The warrant authorized officers to videotape and photograph the interior of Noriega's residence, the vehicles, and the bag; to process the premises for fingerprints and blood evidence, and to test the premises and all items seized.  (Conway Aff. Ex. E & H at 5-6.)

"[N]o Warrants shall issue, but upon probable cause, supported by Oath of affirmation, and particularly describing the place to be searched and the persons or things to be seized."  U.S. Const. amend. IV.  "The Fourth Amendment was a response to the English Crown's use of general warrants, which often allowed royal officials to search and seize whatever and whomever they pleased while investigating crimes or affronts to the Crown."  Ashcroft v. al-Kidd, ___ U.S. ___, 131 S.Ct. 2074, 2084 (2011).  "To prevent . . . 'general, exploratory rummaging in a person's belongings' and the attendant privacy violations,' the Fourth Amendment provides that 'a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity.'"  United States v. Galpin, 720 F.3d 436, 445 (2d Cir. 2013)(quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971) and Kentucky v. King, ___ U.S. ___, 131 S.Ct. 1849 (2011).  "The Fourth Amendment guards against this practice by providing that a warrant will issue only if: (1) the Government establishes probable cause to believe the search will uncover evidence of a specific crime; and (2) the warrant states with particularity the areas to be searched and the items to be seized."  United States v. Ganias, ___ F.3d ___, 2014 WL 2722618, at *7 (2d Cir. June 17, 2014)(citing Galpin, 720 F.3d at 445).  "Although somewhat similar in focus, [overbreadth and particularity] are two distinct legal issues: (1) whether the items listed as 'to be seized' in the warrant were overbroad because they lacked probable cause and (2) whether the warrant was

sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers." United States v. Hernandez, 09-cr-625, 2010 WL 26544, at *7 (S.D.N.Y. Jan. 6, 2010).

### a. Probable Cause and Overbreadth

Probable cause is generally demonstrated "where the totality of the circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Clark, 638 F.3d 89, 94 (2d Cir. 2011) (quoting Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007)). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238 (1983) (quotation marks omitted). A reviewing court "must accord considerable deference to the probable cause determination of the issuing magistrate. Such deference derives not only from the law's recognition that probable cause is a fluid concept that can vary with the facts of each case, but also from its strong preference for searches conducted pursuant to a warrant . . . ." Clark, 638 F.3d at 93 (internal citations and quotation marks omitted). "Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. While an effort to fix some general, numerically precise degree of certainty corresponding to 'probable cause' may not be helpful, it is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Gates, 462 U.S. at 235 (quotation and citation omitted). Probable cause "requires only such facts as make wrongdoing or the discovery of evidence thereof

probable." Walczyk, 496 F.3d at 157. "[I]n a close case any doubts should be resolved in favor of upholding the warrant." United States v. Jackstadt, 617 F.2d 12, 14 (2d Cir. 1980)

The defendants argue that there was a lack of probable cause to search any location listed in the warrant.[5] A court examines "whether there exists probable cause to support the breadth of the search that was authorized." United States v. Hernandez, 2010 WL 26544, at *7.

A review of the supporting affidavit indicates that there was a fair probability that evidence of illegal drug possession was present in each of the four places cited in the warrant. The affidavit, sworn to by Detective James Knight, who, at the time, had been a member of the NYPD for 17 years, states that on January 10, 2009, Hoey produced a quantity of cocaine from a dark-colored gym bag in Room 508 of the Kitano Hotel. Hoey, Calo, and Nicole Zobkiw ingested cocaine. After Calo began convulsing and foaming at the mouth, Hoey placed her on a couch and brushed the cocaine remaining on the table into a clear plastic bag. Noriega subsequently entered the hotel room and, upon instruction from Hoey, removed the dark-colored gym bag from the hotel room. Detective Knight viewed video surveillance of Noriega carrying a dark-colored gym bag through the lobby of the Kitano Hotel and into a white limousine. Noriega informed Detective Edward Boyle that he drove the white Lincoln Town Car to the Long Island Banana Corporation headquarters, where he moved the bag from the white Lincoln Town Car to the trunk of a black Chrysler and drove the white Lincoln Town Car to his apartment. Deferring to the determination of the issuing judge, Noriega's travel in the white Lincoln Town Car, his statement that he placed the dark-colored gym bag in the trunk of the

---

[5] Hoey seeks to "suppress any evidence seized pursuant to a warrant issued by a New York County Judge on January 11, 2009." (Mem. in Supp. at 15.) In the same memorandum, Hoey admits that a warrant for the "dark-colored bag inside the black Chrysler" would have been properly sought.

black Chrysler, and his subsequent travel to his apartment provided the judge with a fair probability that evidence of illegal drug possession could be found at those locations. A reasonable inference from these facts was that evidence of illegal drug possession could be present in either vehicle, in the dark-colored gym bag itself, or in Noriega's apartment.

Noriega argues that there was no probable cause to search his apartment because the warrant lacked facts supporting the inference that Noreiga was aware of illegal activity and the affidavit indicated that Noriega informed the officer that he had left the dark-colored gym bag in the trunk of the black Chrysler before driving the white Lincoln Town Car to his apartment. Noriega also contends that facts omitted from the affidavit in support of the warrant, such as the fact that Zobkiw did not state that Hoey returned the cocaine to the dark-colored gym bag and the absence of facts showing that Noriega was aware of the presence of cocaine in the hotel room, prevent an inference of probable cause. (Noriega Mem. in Supp. at 8-9.) To determine if a material omission was necessary to a probable cause determination, "[t]he ultimate inquiry is whether, after putting aside . . . material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." United States v. Martin, 426 F.3d 68 (2d Cir. 2005) (quotations and citations omitted). "[T]he law does not demand that an officer applying for a warrant 'volunteer every fact that arguably cuts against the existence of probable cause' as long as he does 'not omit circumstances that are critical' to its evaluation. Walczyk, 496 F.3d at 161 (quoting Brown v. D'Amico, 35 F.3d 97, 99 (2d Cir. 1994). "If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000).

The warrant omits Noriega's statement to the NYPD that he never opened the dark-colored gym bag or knew its contents.  The warrant also omitted that Noriega voluntarily went to speak to the NYPD and informed the police of the location of the keys to the black Chrysler.  The affidavit notes that Noreiga removed the bag "from which the cocaine had originally been produced" from the hotel room.  There is no statement in the affidavit that the cocaine was returned to the bag, or that Noriega was aware that there was cocaine in the bag.  Noriega argues that had these statements and facts been included in the affidavit, they would have negated the probable cause for the search of his home.

Viewing the application as "corrected" to include these statements and facts, the totality of the circumstances provided the issuing judge with probable cause to sign the warrant.  The fact that the cocaine was originally in the bag and the fact that Hoey instructed Noriega to remove the bag from the Kitano Hotel supports the inference that the dark-colored gym bag contained illegal drugs when Noriega removed it from the Kitano Hotel.  Although Noriega voluntarily spoke with the NYPD, his statements that he neither knew what was in the bag nor opened the bag do not foreclose probable cause to search his home for evidence of the illegal drug possession relating to Kim Calo's death.  Noriega spoke to the police because he "would not want any problems with the law." (Conway Aff. Ex. C at 2.)  "A totality-of-the-circumstances analysis . . . permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip . . . ." Gates, 462 U.S. at 234.  The issuing judge would still have a basis for probable cause even if those statements had been included in the warrant, as there would have been a substantial likelihood to find evidence of illegal drug possession at Noriega's home.

Hoey contends that the warrant should not have authorized a full search of both vehicles, as Noriega informed the NYPD officer that he had placed the dark-colored gym bag in the trunk of the vehicle. Hoey argues that the search should not have extended to the interior of the black Chrysler or the front console of the black Chrysler, as Noriega stated that he placed the bag in the trunk, not the interior cabin, of the black Chrysler and the dark-colored gym bag could not have fit in the console. "Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab." United States v. Ross, 456 U.S. 798, 824 (1982). However, "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." California v. Acevedo, 500 U.S. 565, 580 (1991). There was a fair probability that evidence of the crime of illegal drug possession, relating to the death of Kim Calo, would be found in the black car in which Noreiga placed the dark-colored gym bag. Similarly, there was probable cause to search the trunk of the white Lincoln Town Car. Detective Knight's statement that Noriega placed the bag in the white Lincoln Town Car, and subsequent statement that he placed the bag in the trunk of the black Chrysler, does not draw a clear distinction between the trunk and the cabin of the white Lincoln Town Car, so as to indicate that there was not a fair probability of evidence in either the trunk or the cabin of the white Lincoln Town Car.

The warrant did not authorize a search for the dark-colored gym bag, but a search for evidence of illegal drug possession, including items that would fit and could be located within the front console of a car. A ziplock-style bag, envelope, or packet containing powdered cocaine could have been placed in and then removed from the larger gym bag and would fit in small spaces and crevices within the cabin of the car. Accordingly, the "limitations" imposed by

the "physical dimensions of the evidence" would not exclude the front console of the car as a place where evidence may be found. Galpin, 720 F.3d at 447.

      b.  Particularity

"The particularity requirement has three components. First, a warrant must identify the specific offense for which the police have established probable cause." Galpin, 720 F.3d at 445 (internal citations and quotations omitted). "Second, a warrant must describe the place to be searched." Id. at 445-46. "Third, the warrant must specify the items to be seized by their relation to the designated crimes." Id. at 446. "A warrant must be 'sufficiently specific to permit the rational exercise of judgment [by the executing officers] in selecting what items to seize.'" United States v. Liu, 239 F.3d 138, 140 (2d Cir. 2000) (quoting United States v. LaChance, 788 F.2d 856, 874 (2d Cir. 1986) (alteration in original).

Defendants argue that the warrant is not sufficiently particularized because it does not provide a time frame for the items and because the list of items to be seized is overbroad. The warrant met the particularity requirements set forth in Galpin. It described the places to be searched: Noriega's residence, inside two vehicles, and inside a dark-colored gym bag. The warrant also specifies particular items to be seized, as it provides specific examples of all materials which may be seized. "Once a category of seizable papers has been adequately described, with the description delineated in part by an illustrative list of seizable items, the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category." United States v. Riley, 906 F.2d 841, 845 (2d Cir. 1990). As in Riley, the warrant here provided an illustrative list of items to be seized.

The warrant states that the items to be seized are "evidence of illegal drug possession." Hoey cites United States v. Zemlyansky, 945 F. Supp. 2d 438, 456 (S.D.N.Y.

2013), to support the argument that the warrant was not sufficiently particular.  Unlike in Zemlyansky, in which only one subsection of the list of items to be seized contained a reference to specific offenses, the reference to "evidence of illegal drug possession" in the warrant at issue refers to the entire list of seizable items.  In Zemlyansky, there was no offense indicated as to any physical evidence, computers, and thumb drives, or seven subsections of searchable electronic material.  The subsection which referred to crimes stated, "any computer equipment and storage device capable of being used to commit, further or store evidence of the federal criminal offenses of wire fraud . . . ."  Id. at 451.  The court found that such a construction was not limiting, as any computer equipment might have been capable of being used to commit wire fraud and other related crimes.  Id. at 458.  Unlike the warrant at issue in Zemlyansky, the warrant in this case identifies the offense and specifies the items as related to the crime of illegal drug possession.

"Although a warrant's failure to include a temporal limitation on the things to be seized may, in certain circumstances, render a warrant insufficiently particular, there is no consensus in this Circuit 'as to when one is required.'"  United States v. Jacobson, 12-cr-432 (JFB), 2014 WL 962227, at *8 (E.D.N.Y. Mar. 13, 2014) (quoting United States v. Cohan, 628 F. Supp. 2d 355, 366 (E.D.N.Y. 2009_), see also United States v. Levy, 11-cr-62 (PAC) 2013 WL 664712, at *11 (S.D.N.Y. Feb. 25, 2013) ("For overbreadth and particularity purposes, no controlling authority requires a specific time frame.  In these circumstances, it cannot be said that executing officers should have realized a lack of date limitation constituted a facial deficiency in the Search Warrant such that reliance on it would be unreasonable.").  Here, the warrants sought evidence of illegal drug possession.  The defendants have not demonstrated how the evidence of a temporal limitation made the warrant insufficiently particular.

Because the issuing judge's decision had a substantial basis to believe that the warrant was supported by probable cause and was sufficiently particular, Hoey and Noriega's motions to suppress are denied.[6]

V. <u>Motion to Suppress Evidence of Noriega's Statement to the Police</u>

Noriega seeks to suppress evidence of his statement to the NYPD unless the government locates his contemporaneous handwritten statement. Because both parties acknowledge that this motion is premature, as the parties are still attempting to locate the statement, the Court declines to rule on the motion until the parties have exhausted efforts to locate the handwritten statement.

CONCLUSION

For the reasons stated above, Hoey's motion for the Court to conduct an <u>in camera</u> review of the instructions given to the grand jury is granted, and the government shall produce such portions as relate to the "death results" penalty enhancement instruction within fourteen (14) days of this Order. Hoey's other motions (Dkt. No. 110) are denied and Noriega's motion to suppress physical evidence (Dkt. No. 111) is denied. The Court denies without prejudice Noreiga's motion for suppression of his statement to the NYPD.

---

[6] In his reply memorandum, Hoey raises a concern that the scope of the warrant was exceeded when officers removed "furry restraints," "bondage restraints," and "a dog leash with black collar" from Noriega's home. The Court declines to rule on an issue raised in reply and not fully briefed at this time. If Hoey or Noriega desire to move to exclude evidence which exceeded the limits of the search, he may move to do so. "[W]hen items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items, not invalidation of the entire search." <u>United States v. Matias</u>, 836 F.2d 744, 747 (2d Cir. 1988) (citing <u>Andresen v. Maryland</u>, 427 U.S. 463, 482 n.11 (1976).

SO ORDERED.

_/s/ P. Kevin Castel_

P. Kevin Castel
United States District Judge

Dated: New York, New York
      July 2, 2014